UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

STEVEN PUNSKY,

    Plaintiff,

  vs.              Civil No. 19-00235-NT

CITY OF PORTLAND, et al.,

    Defendants.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, WITH INCORPORATED MEMORANDUM OF LAW

Plaintiff Steven Punsky sued Defendants City of Portland, Kimberly Donnell, Christopher Dyer, Darrel Gibson, Jacob Titcomb, Jonathan Lackee, and Vern Malloch, alleging that they violated his civil rights by refusing him footwear when he was being held outside and by refusing to provide him with medical attention. They also assert tort claims arising from the same alleged conduct. As the record will show, these assertions are indisputably false. The Plaintiff fails to state viable claims as a matter of law. In any event, all Defendants are protected by immunity under the Maine Tort Claims Act and the individual Defendants are protected by qualified immunity. Pursuant to Federal Rule of Civil Procedure 56 and Local Rules 7 and 56, the Defendants hereby request summary judgment on all of the Plaintiff's claims.

### FACTS

The facts underlying this Motion are set forth in the accompanying Statement of Material Facts, which is hereby incorporated by reference. Fed. R. Civ. P. 10(c).

### PROCEDURAL POSTURE

The operative pleading in this case is the Second Amended Complaint, which the Plaintiff filed on June 4, 2019. That pleading contains the following claims: excessive force against Defendants Donnell, Dyer, Gibson, Titcomb, and Lackee in violation of the 4th and 14th Amendments (Count I); violation of the Maine Civil Rights Act (5 M.R.S. § 4682) against all

Defendants (Count II); assault against Defendants City of Portland, Donnell, Dyer, Gibson, Titcomb, and Lackee (Count III); battery against Defendants City of Portland, Donnell, Dyer, Gibson, Titcomb, and Lackee (Count IV); intentional infliction of emotional distress against all Defendants (Count V); negligent infliction of emotional distress against all Defendants (Count VI); and supervisory violation under 42 U.S.C. § 1983 against all Defendants (Count VII). The Defendants denied the material allegations in the Second Amended Complaint and asserted numerous affirmative defenses, including failure to state a claim, immunity, and qualified immunity.

The Plaintiff has twice attempted to add a claim that is not mentioned in the Second Amended Complaint – specifically, a claim based on the so-called "special relationship doctrine." (ECF Nos. 27 and 43). The Court has twice denied the Plaintiff leave to add that claim. (ECF No. 34 and 46).

## ARGUMENT

**I.   THE PLAINTIFF FAILS TO STATE ACTIONABLE CIVIL RIGHTS CLAIMS AND, IN ANY EVENT, THE INDIVIDUAL DEFENDANTS ARE PROTECTED BY QUALIFIED IMMUNITY.**

In Counts I, II, and VII, the Plaintiff asserts claims under 42 U.S.C. § 1983 and the Maine Civil Rights Act, 5 M.R.S. § 4682 ("MCRA"), alleging that his federal and state constitutional rights were violated by the circumstances surrounding his arrest. Pursuant to Section 1983, a claim for relief may be asserted only against those persons who, "under color of law," act to deprive another of "rights, privileges, or immunities" secured by either the United States Constitution or federal statutes. § 1983; *see Board of County Comm'rs v. Brown*, 520 U.S. 397, 402-03 (1997) (citing and quoting Section 1983). The United States Court of Appeals for the First Circuit has elaborated on this standard:

> In assessing the imposition of liability under section 1983, we must first ask "(1) whether the conduct complained of was committed by a person acting under the color of state law; and (2) whether this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." There are two

> aspects to this second inquiry: "(1) there must have been a *deprivation* of federally protected rights, privileges or immunities, and (2) the conduct complained of must have been *causally connected* to the deprivation."

*Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir. 1989) (citations omitted) (emphasis in original). The United States Supreme Court has emphasized that Section 1983 "is not itself a source of substantive rights, 'but merely provides a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393 (1989) (citation omitted).

The Maine Law Court has held that the MCRA is patterned on Section 1983. *See Jenness v. Nickerson*, 637 A.2d 1152, 1158 (Me. 1994). Therefore, as this Court has held on several occasions, "[t]he disposition of the federal claim controls the plaintiff's claim under the Maine Civil Rights Act...." *Forbis v. City of Portland*, 270 F. Supp. 2d 57, 61 (D. Me. 2003) (citing *Jenness*, 637 A.2d at 1158 and *Fowles v. Stearns*, 886 F. Supp. 894, 899 n.6 (D. Me. 1995)).

### A. The Plaintiff has not presented any actionable claims for use of excessive force.

When a claim of excessive force is asserted as a result of an arrest or investigatory stop, the claim is analyzed under the Fourth Amendment. *Graham*, 490 U.S. at 394. It is well established that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396 (citing *Terry* v. *Ohio*, 392 U.S. 1, 22-27 (1968)). A person can state a viable excessive force claim under the Fourth Amendment only if he or she can demonstrate that the police officer's actions were not objectively reasonable, viewed in light of the facts and circumstances confronting him or her and without regard to his or her underlying intent or motivation. *Id.* at 397 (citations omitted). The Supreme Court has emphasized that the officer's actions must be analyzed from the perspective of "a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citations omitted). Moreover, the Supreme Court has held that "'not every push or shove'" will reach the level required for a viable excessive force claim. *Id.* (citation

omitted); *Gaudreault* v. *Salem*, 923 F.2d 203, 205 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991).

The facts of this case do not reflect a use of force that was excessive as a matter of law. According to the Second Amended Complaint, the force allegedly used by the Defendants was: one, refusing the Plaintiff's requests for footwear; two, refusing the Plaintiff medical care; and three, pointing a taser at his head. The statements of the Defendants – which are supported by audio and video recordings – establish that the first two of those allegations are indisputably false. The Plaintiff was offered footwear at least eight times and had footwear brought to him at one point. The Plaintiff consistently refused the footwear. Moreover, the Plaintiff was assessed by a paramedic at the scene of the arrest and refused further treatment. The Portland police also took the Plaintiff from the scene of the arrest directly to Maine Medical Center, where he was evaluated in the emergency department.

The allegations pertaining to the taser fail to state a viable claim. It is undisputed that the Defendants never deployed the taser at any time during their interactions with the Plaintiff. Moreover, both the Defendants' statements and the video and audio evidence establish that the Plaintiff was non-compliant at the times the taser was displayed. As a matter of law, pointing a taser at a suspect without deploying it does not constitute excessive force, particularly when the suspect has been non-compliant. *See Stricker v. Township of Cambridge*, 710 F.3d 350, 354, 364-65 (6th Cir. 2013) (holding that showing but not deploying taser not excessive force).

Finally, the record establishes that the only force used to effect the Plaintiff's arrest was the application of handcuffs. The record further establishes that the officer who applied the handcuffs checked to ensure they were not too tight and she double locked them to prevent them from becoming too tight. Since there is no evidence in this case that the handcuffs were applied in a manner that deviated from City policy, the fact that the Plaintiff was handcuffed cannot support an excessive force claim. *See Calvi v. Knox Cty.*, 470 F.3d 422, 428 (1st Cir. 2006)

(holding that handcuffing arrestee not excessive force). The Defendants are entitled to summary judgment with regard to the Plaintiff's excessive force claims.

**B. The Plaintiff has not presented a viable Fourteenth Amendment claim for failure to provide medical treatment.**

It appears that the Plaintiff may be attempting to assert a Fourteenth Amendment Claim against the Defendants for failure to provide him with medical care. If so, his claim fails as a matter of law.

The First Circuit has held that the Due Process Clause of the Fourteenth Amendment requires "responsible governmental authorities to provide medical care to persons who have been injured while being apprehended by the police." *Gaudreault*, 923 F.2d at 208. The First Circuit has further stated that "[g]enerally, the standard applied [to such claims] is the same as the Eighth Amendment standard." *Ruiz-Rosa v. Rullan*, 485 F.3d 150, 155 (1st Cir. 2007). Under the Eighth Amendment, governmental authorities are required to attend to a prisoner's "serious medical needs." *See Gaudreault*, 923 F.2d at 208 (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)).

However, governmental authorities do not violate the Constitution unless they exhibit "deliberate indifference" to an established serious medical need. *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). As the First Circuit has noted, a deliberate indifference claim must satisfy both an objective and a subjective standard. *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484, 497 (1st Cir. 2011). The objective standard focuses on the seriousness of the risk of harm to the plaintiff's health and requires a showing of "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'" *Farmer v. Brennan*, 511 U.S. 825, 843 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). As with the Eighth Amendment standard, to be "serious" the need must be "one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gaudreault*, 923 F.2d at 208. The objective component of deliberate indifference

does not impose upon governmental authorities a duty to provide ideal care or the care of the plaintiff's choosing. *See United States v. Derbes*, 369 F.3d 579, 583 (1st Cir. 2004).

To meet the subjective component of the deliberate indifference standard, a plaintiff must also show that the pertinent governmental actor had "a culpable state of mind and intended wantonly to inflict pain." *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991). "The requisite state of mind may be manifested by the official['s] response to [the plaintiff's] known needs or by denial, delay, or interference with prescribed health care." *Id*. In short, a plaintiff must show: "(1) the defendant knew of (2) a substantial risk (3) of serious harm and (4) disregarded that risk." *Calderon-Ortiz v. LaBoy-Alvarado*, 300 F.3d 60, 64 (1st Cir. 2002).

Federal courts have held that deliberate indifference does not exist as a matter of law when a person in the custody of a governmental entity refuses proffered medical treatment. For example, in *Barry v. Corizon, Inc.,* Civil No. 14-527-JDL, 2016 U.S. Dist. LEXIS 99211 (D. Me. July 29, 2016) (adopted by 2016 U.S. Dist. LEXIS 99211 (D. Me. Nov. 14, 2016)), this Court analyzed a denial of medical care claim brought by a former county jail detainee. In describing the subjective component of the deliberate indifference standard, the Court noted that the plaintiff was required to show that the defendants had "a 'purposeful intent' to neglect Plaintiff's serious medical needs," which in turn required "evidence that the alleged absence or inadequacy of treatment was intentional." *Id*. at *18-19 (citing and quoting *Perry v. Roy,* 782 F.3d 73, 79 (1st Cir. 2015) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976) and *Watson v. Caton,* 984 F.2d 537, 540 (1st Cir. 1993)). In rejecting the plaintiff's claim that he developed cancer as the result of inadequate medical care at the jail, the Court held that the plaintiff could not establish that that the defendants' deliberate indifference was the cause of the alleged condition, noting that the plaintiff declined a diagnostic procedure that might have revealed the condition. *Id*. at *23. That application of the deliberate indifference standard has been adopted by several circuit courts of appeal. *See, e.g., Pinkston v. Madry*, 440 F.3d 879, 892 (7th Cir. 2004) (finding no deliberate indifference where the plaintiff was repeatedly uncooperative with medical staff and

refused medical assistance when it was offered to him); *Beck v. Skon,* 253 F.3d 330, 333-34 (8th Cir. 2001) (holding that inmate's refusal to comply with recommended treatment and refusal to accept proffered medical accommodations precluded deliberate indifference).

Virtually none of the elements of a Fourteenth Amendment medical care claim exist in this case. There is no evidence that the Plaintiff had a "serious medical need" at the time of the events in this case. To the contrary, the Plaintiff was seen by a paramedic at the scene, professed that he was fine, and declined further treatment. In addition, as the Court can note from the video/audio recording of the events that evening, the Plaintiff did not complain to the paramedic or the officers that his feet were cold or that they were in pain. None of that would suggest to any of the Defendants that the Plaintiff had a medical need that was "serious."

Moreover, there is no evidence that the Defendants purposefully intended to neglect a serious medical need. The Defendants arranged to have the Plaintiff examined both at the scene of the arrest and at MMC after the arrest had occurred. On both occasions, he was assessed by medical professionals. To the extent he had any medical needs – let alone serious medical needs – the Defendants ensured that he received timely access to medical care.

Finally, the Plaintiff's refusal of treatment that the Defendants made available to him establishes that the Defendants' actions were not the cause of any injuries the Plaintiff may have sustained. Again, as the Court can note from the video/audio recording of the events that evening, the paramedic offered to conduct a fuller assessment of the Plaintiff and provide treatment – even offering to do so in the ambulance. In response, the Plaintiff said he was fine, that he would seek treatment in the future for a chronic back condition, and that he did not need any further assessment or treatment at that time. Having declined medical treatment made available to him by the Defendants, the Plaintiff cannot establish that the Defendants were deliberately indifferent. Therefore, the Defendants are entitled to summary judgment with regard to any Fourteenth Amendment claim premised on lack of medical care.

**C. Even if the Plaintiff had pleaded a claim under the so-called special relationship doctrine – which he did not – such a claim would fail on this record.**

The Court has twice denied the Plaintiff leave to amend his Second Amended Complaint to add a claim under the so-called special relationship doctrine. The reason behind the Plaintiff's insistence on adding the claim is apparent – his Second Amended Complaint does not contain such a claim. The Second Amended Complaint does not refer to the special relationship doctrine, nor does it contain factual allegations to substantiate the elements of that theory, such as the existence of a special relationship.

Even if the Second Amended Complaint could be construed to include a special relationship doctrine claim, the Defendants would be entitled to summary judgment. As a general matter, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney* v. *Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). The Supreme Court has explained that "[t]he Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security...." *Id.* at 196. Therefore, "[t]he Constitution protects people from the government, not from each other or from themselves." *Ye v. United States*, 484 F.3d 634, 637 (3d Cir. 2007); *see also Estate of Imrie v. Golden Gate Bridge*, 282 F. Supp. 2d 1145, 1148 (N.D. Cal. 2003) (reviewing Supreme Court precedent for the proposition that it is not the purpose of the Due Process Clause to "to ensure that private individuals are protected from each other or themselves" (citing *DeShaney*, 489 U.S. at 195)). The First Circuit has expressed this concept as follows: "the purpose of the Due Process Clause is to protect the people from the state, not to ensure that the state protects them from each other." *Rivera v. Rhode Island*, 402 F.3d 27, 34 (1st Cir. 2005).

The First Circuit has recognized an exception to the general rule discussed in *DeShaney* in situations in which a "special relationship" exists. The First Circuit has stated that "an affirmative, constitutional duty to protect may arise when the state 'so restrains an individual's

8

liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs.'" *Id.* at 34 (quoting *DeShaney*, 489 U.S. at 200). "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *DeShaney*, 489 U.S. at 200.

However, even when a special relationship exists between the state and an individual, a constitutional violation does not occur unless the plaintiff can show that the state's actions shock the conscience of the court. *Rivera*, 402 F.3d at 35 (citations omitted). The First Circuit has emphasized that "[n]ot every negligent, or even willfully reckless, state action that renders a person more vulnerable to danger 'takes on the added character of [a] violation[] of the federal Constitution.'" *Soto v. Flores*, 103 F.3d 1056, 1064 (1st Cir. 1997) (quoting *Monahan v. Dorchester Counseling Ctr., Inc.*, 961 F.2d 987, 993 (1st Cir. 1992) (alterations in *Soto*)). Finally, the First Circuit has stated that "[i]n determining whether the state has violated an individual's substantive due process rights, a federal court may elect first to address whether the governmental action at issue is sufficiently conscience shocking." *Rivera,* 402 F.3d at 34 (citing *County of Sacramento* v. *Lewis*, 523 U.S. 833, 847 n.8 (1998)).

The Supreme Court has described the "shocks the conscience" standard as "somewhat amorphous." *Lewis*, 523 U.S. at 847. The Supreme Court has made it clear, however, that negligently inflicted harm is "categorically beneath the threshold" of a constitutional violation. *Id.* at 849. By contrast, conduct that is "intended to injure in some way unjustifiable by any government interest" is most likely to "shock the conscience." *Id.* In general terms, "[t]he state action must be 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Rivera,* 402 F.3d at 36 (quoting *Lewis*, 523 U.S. at 847 n.8).

Finally, the Supreme Court has indicated that "whether behavior is conscience shocking varies with regard to the circumstances of the case." *Lewis*, 523 U.S. at 850-52. "In situations where actors have an opportunity to reflect and make reasoned and rational decisions,

deliberately indifferent behavior may suffice to 'shock the conscience.'" *Rivera,* 402 F.3d at 36 (quoting *Lewis*, 523 U.S. at 851-52). The Supreme Court has cautioned, however, that "'[d]eliberate indifference that shocks in one environment may not be so patently egregious in another.'" *Ramos-Piñero v. Puerto Rico*, 453 F.3d 48, 53 (1st Cir. 2006) (quoting *Lewis*, 523 U.S. at 850). "The burden to show state conduct that 'shocks the conscience' is extremely high, requiring 'stunning' evidence of 'arbitrariness and caprice' that extends beyond '[m]ere violations of state law, even violations resulting from bad faith' to 'something more egregious and more extreme.'" *J.R. v. Gloria*, 593 F.3d 73, 80 (1st Cir. 2010) (quoting *DePoutot v. Raffaelly*, 424 F.3d 112, 119 (1st Cir. 2005)).

Even if the Court assumes that the Plaintiff has alleged a deprivation of a protected interest in life, liberty, or property and that a "special relationship" was created by the Defendants' arrest of the Plaintiff, the Plaintiff is nonetheless unable to establish a viable claim under the "special relationship doctrine." Any restraint on the Plaintiff's liberty imposed by the Defendants did not render him unable to care for himself. Nor did the Defendants fail to provide for the Plaintiff's basic human needs.

The only allegations in the Second Amended Complaint that could be construed as an inability to care for himself based on restraint by the Defendants are the averments that the Defendants refused his requests for footwear and that they refused him medical treatment – both of which are indisputably false. Based on both the statements by the officers and the body camera video/audio,[1] the Defendants offered the Plaintiff footwear approximately eight times during the course of their interactions. On every occasion, the Plaintiff either expressly rejected the offers – usually with comments like "I don't need your goddamn shoes" or "I don't need any

---

[1] To the extent the Plaintiff attempts to generate a factual issue by providing testimony that contradicts the video/audio recording of events, the Court must disregard that conflicting testimony. *See Underwood v. Barrett*, 924 F.3d 19, 20 (1st Cir. 2019) (citing *Scott v. Harris*, 550 U.S. 372, 380-81 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

help" – or ignored them. At one point, the Plaintiff declined to put on shoes that the Defendants placed in front of him. There is simply no competent evidence that the Defendants ever denied a request for footwear from the Plaintiff.

Similarly, the record establishes beyond any doubt that the Defendants gave the Plaintiff access to medical care. The Plaintiff was evaluated at the scene of the arrest by a paramedic. The paramedic was able to determine that the Plaintiff knew what was happening, that he had decision-making capability, and that he was able to decide whether or not he wanted further assessment. Therefore, the paramedic honored the Plaintiff's statements that he was fine and that he did not want any further treatment. Notably, as is reflected by the video/audio of the Plaintiff's interaction with the paramedic, the Plaintiff did not complain to the paramedic that his feet were cold, that they were in pain, or that he was concerned about frostbite. To the contrary, the Plaintiff declined the paramedic's offer to get him shoes, saying that he did not care about the cold. Similarly, the Plaintiff declined the paramedic's offer to walk him over to the ambulance to be evaluated. Finally, when the Defendants transported the Plaintiff from the scene he was taken to the Maine Medical Center emergency department for further evaluation – where he again did not complain that his feet were cold or in pain.

In addition, the Plaintiff's "special relationship" claim fails because he cannot demonstrate conscience-shocking conduct as a matter of law. The record does not reflect any intent to injure on the part of the Defendants. Moreover, the record does not reflect *any* deliberate indifference – let alone deliberate indifference that rises to the shocks-the-conscience level. The Plaintiff did not appear to be bothered by the weather and he did not act like someone experiencing frostbite. Moreover, the Plaintiff did not complain of pain in his feet or frostbite. During the time the officers were dealing with the Plaintiff, it appeared to them that: one, the Plaintiff understood what people were saying to him and was responding, though sometimes aggressively and disrespectfully, in an appropriate manner; two, that he understood what was going on; and three, that he was capable of communicating with them if he had a complaint or

concern. Therefore, the Defendants did not prevent the Plaintiff from protecting himself from the elements – to the contrary, they urged him to do so, brought him the means to do so, and ensured that he received access to timely and appropriate medical care. And, as discussed above, the Plaintiff's refusal of that proffered medical care alone precludes a finding of deliberate indifference as a matter of law. *See Barry,* 2016 U.S. Dist. LEXIS 99211, at *18-19 (adopted by 2016 U.S. Dist. LEXIS 99211 (D. Me. Nov. 14, 2016)); *Pinkston*, 440 F.3d at 892; *Beck,* 253 F.3d at 333-34.

Moreover, the evidence discussed above does not reflect conduct by the Defendants that is either egregious or outrageous – let alone *so* egregious and *so* outrageous that it meets the "extremely high" burden imposed by the shocks-the-conscience standard. Quite the opposite is true: the officers made numerous efforts to get the Plaintiff to put on shoes and afforded him access to medical assistance. They are not constitutionally responsible for consequences that may have flowed from the Plaintiff's recalcitrance. Therefore, even if the Plaintiff had pleaded a "special relationship doctrine" claim – which he obviously did not – such a claim would fail on these facts as a matter of law.

### D.  The Plaintiff cannot maintain civil rights claims against Defendants Malloch or Dyer.

Neither Defendant Malloch nor Defendant Dyer were present for the events of December 31, 2017. As such, they clearly cannot be held liable for the constitutional violations the Plaintiff has alleged arising out of those events.

Even if the Plaintiff's claims against Defendants Malloch and Dyer are premised on supervisory liability, such claims fail as a matter of law. Based on First Circuit precedent, a claim of "supervisory liability" has two elements. *See Pineda v. Toomey*, 533 F.3d 50, 54 (1st Cir. 2008). First, a plaintiff must show that one of the supervisor's subordinates abridged the plaintiff's constitutional rights. *See id*. Second, a plaintiff must show that "the [supervisor]'s action or inaction was affirmative[ly] link[ed] to that behavior in the sense that it could be

characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference." *Id.* (alterations in original) (quoting *Lipsett v. Univ. of P.R.*, 864 F.2d 881, 902 (1st Cir. 1988)).

A supervisor may not be held liable under section 1983 based solely on *respondeat superior*, nor can a supervisor's section 1983 liability rest exclusively on the supervisor's position of authority. *See Ramírez-Lluveras v. Rivera-Merced*, 759 F.3d 10, 19 (1st Cir. 2014). A supervisor can only be held liable under Section 1983 for the supervisor's own acts or omissions. *See Gutierrez-Rodriguez*, 882 F.2d at 562; *Figueroa v. Aponte-Roque*, 864 F.2d 947, 953 (1st Cir. 1989).

A claim of supervisory liability cannot be premised upon negligent acts. *Ramírez-Lluveras*, 759 F.3d at 19 (citations omitted). Rather, supervisor's conduct must demonstrate "reckless or callous indifference to the constitutional rights of others." *Febus-Rodríguez v. Betancourt-Lebrón*, 14 F.3d 87, 92 (1st Cir. 1994). To show deliberate indifference by a supervisor, a plaintiff must show "(1) 'that the officials had knowledge of facts,' from which (2) 'the official[s] can draw the inference' (3) 'that a substantial risk of serious harm exists.'" *Ramírez-Lluveras*, 759 F.3d at 19 (alteration in original) (quoting *Ruiz-Rosa*, 485 F.3d at 157).

Finally, the First Circuit has emphasized that "deliberate indifference alone does not equate with supervisory liability." *Figueroa-Torres v. Toledo-Dávila*, 232 F.3d 270, 279 (1st Cir. 2000) (alteration in original) (quoting *Camilo-Robles v. Hoyos*, 151 F.3d 1, 7 (1st Cir. 1998)). A plaintiff must also show a "solid" causal link between a supervisor's conduct and the constitutional violation. *See Ramírez-Lluveras*, 759 F.3d at 19. The causation requirement "contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." *Hegarty v. Somerset County*, 53 F.3d 1367, 1380 (1st Cir. 1995). "[I]solated instances of unconstitutional activity" will not suffice to establish the necessary causal connection. *Id.*

The Plaintiff cannot meet any of the requirements for a supervisory liability claim against Defendants Malloch and Dyer. As noted above, none of officers on the scene violated the

13

Plaintiff's constitutional rights; therefore, the Plaintiff cannot satisfy the first prong of the supervisory liability formula. Similarly, the Plaintiff cannot show any action or inaction by Defendants Malloch and Dyer relative to a constitutional violation that could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference. Finally, there is no evidence of acts or omissions by Defendants Malloch and Dyer themselves that led inexorably to any constitutional violation. Therefore, they are entitled to summary judgment with regard to the Plaintiff's civil rights claims.

### E.  The Plaintiff has not demonstrated a custom or policy of the City that was the moving force behind any constitutional violation.

Governmental entity liability under Section 1983 can be assessed only "where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton v. Harris,* 489 U.S. 378, 385 (1989). The Supreme Court has required a plaintiff to demonstrate that a policy or custom of the governmental entity led to the constitutional deprivation alleged. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694 (1978). The plaintiff must show both the existence of a policy or custom and a causal link between that policy and the constitutional harm. *See, e.g., City of Canton,* 489 U.S. at 387-90; *Oklahoma City v. Tuttle,* 471 U.S. 808, 823 (1985). Moreover, the policy or custom must be the result of acts or omissions of the municipality's policymakers that exhibit "deliberate indifference" to the rights of the municipality's inhabitants. *City of Canton*, 489 U.S. at 387-90; *Gaudreault*, 923 F.2d at 209. Finally, a municipality cannot be held liable when there is no evidence of a constitutional violation by its employees. *See Evans v. Avery*, 100 F.3d 1033, 1039-40 (1st Cir. 1996) (citing *City of Los Angeles* v. *Heller*, 475 U.S. 796 (1986) (*per curiam*)).

Regardless of which constitutional violation the Plaintiff contends he is asserting, he fails to demonstrate a basis for the City's liability. First, as discussed above, he cannot establish that any of the individual Defendants violated his constitutional rights; therefore, the City cannot be

liable. In any event, there is no evidence in this case of a custom or policy of the City that led to any constitutional deprivation. To the contrary, the only evidence in this case is that the City had a policy against the use of excessive force in effecting arrests, and that there was no custom or practice that deviated from that policy. Similarly, there is no custom or policy of the City that condones or endorses conduct by police officers that violates the constitutional rights of arrestees through behavior that was shocking to the conscience. The City is entitled to summary judgment on the Plaintiff's civil rights claims.

### F. The individual Defendants are protected from civil rights liability by qualified immunity.

The individual Defendants are entitled to judgment on the Plaintiff's civil rights claims based on qualified immunity. Qualified immunity protects government officials from liability for civil damages for actions taken under color of state law. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has held that "officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589, 199 L. Ed. 2d 453 (2018) (quoting *Reichle* v. *Howards*, 566 U. S. 658, 664 (2012)). The Supreme Court has clarified that "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (citation omitted). In short, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Therefore, a government official may invoke qualified immunity when the alleged actions, though causing injury, did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela* v. *Hughes*, 138 S. Ct. 1148, 1152, 200 L. Ed. 2d 449 (2018) (*per curiam*) (internal quotation marks and citation omitted); *Conlogue v. Hamilton*, 906 F.3d 150, 154 (1st Cir. 2018) (quoting *Harlow*, 457 U.S. at 818).

The Supreme Court has adopted a "two-pronged inquiry" in applying qualified immunity. *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). The first area of inquiry "asks whether the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right[.]'" *Id.* at 655-56 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The second area of inquiry "asks whether the right in question was 'clearly established' at the time of the violation." *Id.* at 656 (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Although the areas of inquiry are enumerated, the Supreme Court has held that the order in which a court conducts its inquiry is left to the court's sound discretion. *Id.* (citing *Pearson*, 555 U. S. at 236).

In the context of qualified immunity, "'[c]learly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Wesby*, 138 S. Ct. at 589 (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011) (quoting *Anderson* v. *Creighton*, 483 U. S. 635, 640 (1987))). The legal rule at issue "must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *Id.* at 589-90 (citations and internal quotation marks omitted). A rule that is merely "suggested by then-existing precedent" is not "clearly established"; "[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* (citing *Reichle*, 566 U. S. at 666). In several recent decisions, the Supreme Court has emphasized the focus of the "clearly established" inquiry: "existing law must have placed the constitutionality of the officer's conduct '*beyond debate*.'" *Id.* (emphasis added) (quoting *al-Kidd,* 563 U.S. at 741).

Even if a plaintiff can demonstrate the existence of "'controlling authority' or a 'consensus of cases of persuasive authority,'" *Alfano v. Lynch*, 847 F.3d 71, 75 (1st Cir. 2017), a governmental official who violates such precedent is still protected by immunity unless the plaintiff can also show that "an objectively reasonable official in the defendant's position would

have known that his conduct violated that rule of law." *Id.* (citation omitted). "The question is not whether the official actually abridged the plaintiff's constitutional rights but, rather, whether the official's conduct was unreasonable, given the state of the law when he acted." *Id.* (citation omitted). This requirement affords "some breathing room for a police officer even if he has made a mistake (albeit a reasonable one) about the lawfulness of his conduct." *Conlogue*, 906 F.3d at 155.

Finally, the Supreme Court has repeatedly reminded the federal courts "not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015). The Court has instructed that "this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier*, 533 U.S. at 201). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Id.* (emphasis supplied by the Supreme Court) (quoting *al-Kidd,* 563 U.S. at 742).

As noted above, the Plaintiff cannot establish a constitutional violation by any of the individual defendants. Therefore, he cannot meet the first prong of the qualified immunity test.

In any event, there is no evidence in this case that any of the individual Defendants violated a clearly established right. There is no controlling authority or consensus of cases of persuasive authority to suggest that placing handcuffs on the Plaintiff or pointing a taser at an uncooperative and verbally combative suspect constitutes excessive force. To the contrary, case law in this appellate circuit and elsewhere suggests that the opposite is true. *See Calvi,* 470 F.3d at 428 (holding that handcuffing arrestee not excessive force); *Stricker*, 710 F.3d at 364-65 (6th Cir. 2013) (holding that showing but not deploying taser not excessive force).

Similarly, regardless of how the Plaintiff characterizes the claim – either as a access to medical care claim (which was at least mentioned in the Second Amended Complaint) or as a "special relationship" claim (which was not) – there is no controlling authority or consensus of cases of persuasive authority to suggest that an officer who holds a suspect (and later an

arrestee) outside in the cold violates that suspect's due process rights when the officer repeatedly offers the suspect protective clothing (which the suspect refuses) and provides the suspect with access to medical care. As discussed above, under either theory the plaintiff is required to demonstrate at least deliberate indifference and at most conscience-shocking behavior. Given the numerous offers of footwear (including placing footwear in front of the Plaintiff), the access to the paramedic at the scene and later at MMC, and the Plaintiff's consistent refusals, the individual Defendants could have believed that their conduct did not rise to the level of either deliberate indifference or conscience-shocking behavior. Therefore, the individual Defendants are protected from civil rights liability by qualified immunity.

## II.   THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT WITH REGARD TO THE PLAINTIFF'S TORT CLAIMS.

The Plaintiff has asserted two torts claims – assault and battery – against Defendants City of Portland, Donnell, Dyer, Gibson, Titcomb, and Lackee only. The Plaintiff has also asserted two torts claims – intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED") – against all of the Defendants. All of those claims arise out of the Plaintiff's arrest on December 31, 2017 at 35 Motley Street in Portland.

As an initial matter, the Court should grant Sgt. Dyer and former Assistant Chief Malloch summary judgment with regard to the tort claims. It is undisputed that neither Sgt. Dyer nor former Assistant Chief Malloch was present for or participated in the arrest or in the circumstances surrounding the arrest. Therefore, they were not involved in the alleged conduct upon which the Plaintiff bases his tort claims.

### A.   The City is immune from suit with regard to the Plaintiff's tort claims.

The Maine Tort Claims Act, 14 M.R.S. §§ 8101-8118 (2014) ("the Act"), provides a general grant of tort immunity to governmental entities: "all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages." § 8103(1). By definition, governmental entities include cities. § 8102(2 & 3) ("governmental entity" defined to include

18

"political subdivisions" of the State, including cities). The only exceptions to this immunity appear in 14 M.R.S. § 8104-A. Since immunity of governmental entities is the rule under the Act, "'exceptions to immunity are to be strictly construed.'" *Thompson v. Dep't of Inland Fisheries & Wildlife*, 2002 ME 78, ¶ 5, 796 A.2d 674 (quoting *New Orleans Tanker Corp. v. Dep't of Transp.*, 1999 ME 67, ¶ 5, 728 A.2d 673).

Moreover, despite the provisions of Section 8104-A, a governmental entity retains its immunity if the acts alleged constitute discretionary functions. 14 M.R.S. § 8104-B(3)[2]; *see Doucette v. City of Lewiston*, 1997 ME 157, ¶ 8 n.1, 697 A.2d 1292. The Law Court has applied Section 8104-B(3) consistent with the concept of discretionary function immunity afforded to governmental employees by Section 8111. *Roberts v. State*, 1999 ME 89, ¶ 7, 731 A.2d 855.

Since the Plaintiff has asserted tort claims against the City, his claims are subject to the provisions of the Act. § 8103; *see Petillo v. City of Portland*, 657 A.2d 325, 326 (Me. 1995) ("The Act provides that governmental entities are immune from suit on tort claims, subject to specific, limited exceptions."). Pursuant to Section 8103 of the Act, the City is immune from suit with regard to the Plaintiff's tort claims. § 8103. Moreover, none of the exceptions to immunity in Section 8104-A apply to claims arising out of a warrantless arrest.

Even if the Plaintiff's claims did fall within an exception to immunity, the immunity is reinstated by operation of Section 8104-B(3). It is established within this federal circuit that for purposes of the Act, an officer's decision to effectuate a warrantless arrest is a discretionary act. *See, e.g., Hegarty v. Somerset County*, 848 F. Supp. 257, 269 (D. Me. 1994), *aff'd in part,*

---

[2] The pertinent provision of Section 8104-B provides:

> Notwithstanding section 8104-A, a governmental entity is not liable for any claim which results from:
>
> ....
>
> 3. Performing discretionary function.   Performing or failing to perform a discretionary function or duty, whether or not the discretion is abused and whether or not any statute, charter, ordinance, order, resolution or policy under which the discretionary function or duty is performed is valid or invalid.

*remanded in part on other grounds*, 53 F.3d 1367 (1st Cir. 1995); *Jackson v. Town of Sanford*, 1994 U.S. Dist. LEXIS 15367, *6 (D. Me. Sept. 23, 1994) ("A police officer performs a 'discretionary function' within the meaning of section 8111(1)(C) when making a warrantless arrest.") (citing *Leach v. Betters,* 599 A.2d 424, 426 (Me. 1991)). Moreover, an officer effecting an arrest has the discretion to use a reasonable amount of force to do so. *See Steeves v. City of Rockland*, 600 F. Supp. 2d 143, 183 (D. Me. 2009) ("For purposes of the MTCA, '[a] law enforcement official's use of force is a discretionary act.'") (quoting *Comfort v. Town of Pittsfield*, 924 F. Supp. 1219, 1236 (D. Me. 1996)); *see also* 17-A M.R.S. § 107(1)(A) ("law enforcement officer is justified in using a reasonable degree of nondeadly force upon another person ... [w]hen and to the extent that the officer reasonably believes it necessary to effect an arrest or to prevent the escape from custody of an arrested person"). There is no evidence in this case that the officers used any more force than was reasonably necessary to effect the Plaintiff's arrest.[3] Therefore, Section 8104-B(3) re-establishes immunity from any potential liability pursuant to an exception in Section 8104-A.

Finally, for the period of July 1, 2017 to July 1, 2018, the City did not have any liability insurance coverage applicable to claims asserted against the City based on law enforcement activities. Therefore, the City has not waived its immunity by the purchase of insurance. *See* 14 M.R.S. § 8116. For all of these reasons, the City is entitled to summary judgment on all of the tort claims.

**B.     The individual Defendants are protected from tort liability for their discretionary functions by absolute immunity.**

With regard to all of the Plaintiff's tort claims, the individual Defendants are protected from liability by absolute discretionary function immunity under the Act. 14 M.R.S. § 8111;

---

[3] As this Court has noted, "the standard for deciding whether an officer accused of use of excessive force is entitled to MTCA immunity is the same as that for analyzing whether he or she is entitled to qualified immunity with respect to a parallel federal Fourth Amendment claim." *Steeves v. City of Rockland*, 600 F. Supp. 2d 143, 183 (D. Me. 2009). Therefore, for the reasons discussed above with regard to qualified immunity, discretionary function immunity applies to the facts of this case.

*Carroll v. City of Portland*, 1999 ME 131, ¶ 6, 736 A.2d 279 (emphasizing that discretionary function immunity is absolute). "[D]iscretionary immunity... applies unless the defendants' conduct 'clearly exceeded, as a matter of law, the scope of any discretion [they] could have possessed in [their] official capacity as [police officers].'" *Polley v. Atwell*, 581 A.2d 410, 414 (Me. 1990) (emphasis in original). As noted above, an officer's decision to effectuate a warrantless arrest is a discretionary act. *See Hegarty*, 848 F. Supp. at 269; *Jackson*, 1994 U.S. Dist. LEXIS 15367, *6; *Creamer v. Sceviour*, 652 A.2d 110, 115 (Me. 1995). Therefore, to the extent the Plaintiff's tort claims are premised upon the arrest itself or the general circumstances surrounding the arrest, the individual Defendants are absolutely immune.

Moreover, an officer effecting an arrest has the discretion to use a reasonable amount of force to do so. *See Steeves*, 600 F. Supp. 2d at 183; *Comfort*, 924 F. Supp. at 1236; 17-A M.R.S. § 107(1)(A). As noted above, "the standard for deciding whether an officer accused of use of excessive force is entitled to MTCA immunity is the same as that for analyzing whether he or she is entitled to qualified immunity with respect to a parallel federal Fourth Amendment claim." *Steeves*, 600 F. Supp. 2d at 183. Therefore, for the reasons discussed above with regard to qualified immunity, discretionary function immunity applies to any claims based on the use of force. For all of these reasons, the individual Defendants are entitled to summary judgment with regard to the Plaintiff's tort claims.

### C.  The Plaintiff fails to present any viable tort claims.

Even if the Defendants were not immune under the Act, they would nonetheless be entitled to summary judgment on the Plaintiff's tort claims. As noted above, law enforcement officers are privileged under Maine law to use some force to effect an arrest. 17-A M.R.S. § 107(1)(A). Therefore, the fact that Defendants may have engaged in unwanted physical contact (and placed the Plaintiff in apprehension of such) is not actionable. In any event, to the extent the Plaintiff grounds his assault and battery claims on the amount of force used, the claims fail for the same reason that his excessive force claims fail. *See Santoni v. Potter*, 222 F. Supp. 2d 14,

27 (D. Me. 2002) (noting that where there is no evidence that officer used excessive force during or after an arrest, there was also no basis for assault and battery).

To establish a claim of IIED, a plaintiff must prove – among other elements – "conduct [that] was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community." *Champagne v. Mid-Maine Medical Center*, 1998 ME 87, ¶ 15, 711 A.2d 842 (Me. 1998) (citations and internal quotation marks omitted). As discussed above, the Defendants' actions were both reasonable and consistent with prevailing law. In any event, given the fact that the Defendants offered the Plaintiff footwear on several occasions – going as far as placing shoes in front of him – and gave the Plaintiff access to medical care at the scene of the arrest and immediately thereafter, their actions could not be characterized as so extreme and outrageous as to exceed all possible bounds of decency or as utterly intolerable in a civilized community.

Finally, to establish a claim of NIED, a plaintiff must prove either a unique relationship with the defendant or an underlying tort. *See Bryan R. v. Watchtower Bible & Tract Soc'y*, 1999 ME 144, ¶ 31, 738 A.2d 839, *cert. denied*, 528 U.S. 1189 (2000). As a matter of law, no such relationship exists between an arrestee and a law enforcement officer. *See Richards v. Town of Eliot*, 2001 ME 132, ¶ 34, 780 A.2d 281 (no special relationship between police officer and arrestee). Moreover, he has not established a viable underlying tort. Finally, to the extent the Plaintiff's assault and battery claims would allow him to recover damages for the emotional distress, his NIED claim is subsumed in those other claims. *See Rippett v. Bemis*, 672 A.2d 82, 87-88 (Me. 1996). For all of these reasons, the Defendants are entitled to summary judgment on the Plaintiff's tort claims.

## III.   THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES.

The Plaintiff seeks punitive damages with regard to all claims in the Second Amended Complaint. As a matter of law, punitive damages are not recoverable against the City under

Maine tort law, the MCRA, or Section 1983. *See* 14 M.R.S. § 8105(5); *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271 (1981). Therefore, the Court must grant the City summary judgment on the Plaintiff's requests for punitive damages.

The record also does not present a genuine issue of material fact with regard to punitive damage claims against the individual Defendants. Punitive damages against an individual in a Section 1983 action are available only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56 (1983). Similarly, punitive damages under Maine law may be awarded only if the plaintiff can show either ill will or outrageous conduct. *See Tuttle v. Raymond*, 494 A.2d 1353 (1985). Mere negligence or reckless disregard of the circumstances are not enough to justify punitive damages. *Id*. at 1362-63. There is no evidence in the record to suggest that the individual Defendants were motivated by evil motive or intent. Nor is there any evidence that they acted with reckless or callous indifference to the Plaintiff's federally-protected rights. To the contrary, the individual Defendants offered the Plaintiff footwear and gave him timely access to medical care. They cannot be held liable for punitive damages as a matter of law.

**CONCLUSION**

For the reasons set forth in this Motion and supporting memorandum of law, Defendants City of Portland, Kimberly Donnell, Christopher Dyer, Darrel Gibson, Jacob Titcomb, Jonathan Lackee, and Vern Malloch respectfully request summary judgment in their favor on all claims.

Dated at Portland, Maine this 9th day of July, 2021.

> Attorneys for Defendants
> MONAGHAN LEAHY, LLP
> 95 Exchange Street, P.O. Box 7046
> Portland, ME 04112-7046
> (207) 774-3906
> jwall@monaghanleahy.com
>
> BY:     /s/ John J. Wall, III
>         John J. Wall, III

**CERTIFICATE OF SERVICE**

I hereby certify that on July 9, 2021, I electronically filed **Defendants' Motion for Summary Judgment, with Incorporated Memorandum of Law** using the CM/ECF system, which will provide notice to me and the counsel of record for the other parties.

Dated at Portland, Maine this 9th day of July, 2021.

> Attorneys for Defendants
> MONAGHAN LEAHY, LLP
> 95 Exchange Street, P.O. Box 7046
> Portland, ME 04112-7046
> (207) 774-3906
> jwall@monaghanleahy.com
>
> BY:     /s/ John J. Wall, III
>         John J. Wall, III